441 So.2d 48 (1983)
BYLES WELDING & TRACTOR, INC., Plaintiff-Appellee,
v.
E.W. McDANIEL, Defendant-Appellant.
No. 83-258.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*49 Edward Paul Chevallier, of Self & Burkett, Many, for defendant-appellant.
Kenneth N. Simmons, Many, for plaintiff-appellee.
Before FORET, STOKER and YELVERTON, JJ.
FORET, Judge.
This is a suit on open account brought by plaintiff, Byles Welding & Tractor Company, Inc. against defendant, E.W. McDaniel, for the sum of $511.60, together with 25% attorney's fees. The trial court ruled in favor of the plaintiff for the principal sum, but dismissed his claim for attorney's fees. E.W. McDaniel has appealed, and Byles Welding has answered that appeal praying for a reversal of the trial court's ruling on the issue of attorney's fees and also seeking damages for frivolous appeal. The issue on appeal is whether the person who bought the items was clothed with apparent authority to charge to Mr. McDaniel's account.

FACTS
E.W. McDaniel is in the timber business. Byles Welding is a retail outlet which deals primarily in sales and services of farming and power equipment. The two have transacted business for ten years[1]. Throughout that period of time, several persons have properly charged to Mr. McDaniel's account. Those individuals include Mr. McDaniel's father, son, and a few employees who had worked for him for several years. Mr. McDaniel always paid these bills without complaint[2], even though they may not have been signed by the individual who did the purchasing.
On January 29, 1982, a man by the name of Jerry Ford entered plaintiff's place of business and informed sales personnel that he was working for E.W. McDaniel and wished to charge several items to Mr. McDaniel's account. The employees permitted Mr. Ford to charge the items without first checking on his authority to charge. He continued to charge items to Mr. McDaniel's account through February 8, 1982, and ran up a bill of $511.60. In fact, however, Jerry Ford was not working for Mr. McDaniel, but was employed by his brother, Charles Ford, who had leased some timber equipment from Mr. McDaniel[3].
Mr. McDaniel first became aware of the unauthorized charges when he received his statement at the end of February. After being contacted by Byles Welding's bookkeeper, Mr. McDaniel informed her that he was not going to pay the bill. Byles Welding then sent a demand letter on July 23, 1982. In September of 1982, Mr. Clauriste Byles of Byles Welding met with Mr. McDaniel whereby Mr. McDaniel agreed to pay for his son's charges, which were also on the February statement, but again refused to pay for the charges of Jerry Ford. This suit followed.
The trial court ruled in favor of plaintiff on the grounds that "Byles Welding was correct in assuming that Mr. Ford had the apparent authority to charge to his (Mr. McDaniel's) account." We disagree.
Apparent authority is a concept of estoppel operating in favor of a third person seeking to bind a principal for the unauthorized act of an agent. Broadway v. All *50 Star Insurance Corporation, 285 So.2d 536 (La.1973). The burden of proving apparent authority is on the person seeking to bind the principal. Vermilion Bank & Trust Co. v. Miller, 284 So.2d 662 (La.App. 3 Cir.1973).
The judicially created doctrine of apparent authority has two requirements:
(1) The principal must make some form of manifestation to an innocent third party; and,
(2) The third party must rely reasonably on the purported authority of the agent as a result of the principal's manifestations.
Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358 (La.App. 3 Cir.1982).
In this case, there was no manifestation whatsoever made by McDaniel which would lead Byles Welding to believe that Jerry Ford had the authority to charge to McDaniel's account. Mr. Ford had never before worked for McDaniel, nor had he ever charged anything to his account. The trial court apparently found some type of manifestation through McDaniel's past conduct in allowing several persons the right to charge to his account without any complaint on his part. We can find no authority for the trial court's position. The mere fact that a principal has previously made several persons his agents does not give a third person the right to assume that he has made all persons his agents.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely on the assertions of an agent. He has a duty to inquire into the nature and extent of the powers of the agent. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (1957). Byles Welding did not fulfill that duty. It could have easily protected itself by telephoning McDaniel or simply denying Mr. Ford the right to charge until adequate proof of the principal-agent relationship was given. McDaniel should not be punished for Byles Welding's lax business practices.
We find that because there was no manifestation made to Byles by McDaniel that Jerry Ford was his agent, the trial court committed error of law in finding apparent authority. To hold otherwise would result in giving a complete stranger the right to bind another's account on the mere assertion of agency status just because several persons have been allowed to charge to that individual's account in the past.
Since we find for the defendant-appellant, we obviously do not feel that this is a frivolous appeal. Also, we need not reach the issue of attorney's fees.

DECREE
For the reasons assigned, the judgment of the trial court is hereby reversed. Judgment is hereby granted in favor of appellant, E.W. McDaniel, and against appellee, Byles Welding and Tractor, Inc., dismissing plaintiff's suit with prejudice. All costs,
both at the trial level and on appeal are taxed against appellee.
REVERSED AND RENDERED.
NOTES
[1] Prior to that time, plaintiff's business was known as Byles Brothers. E.W. McDaniel dealt with that business for close to thirty years.
[2] Once, in the late 1960's, E.W. McDaniel had complained of an unauthorized charge and informed Byles Brothers that no one was to charge to his account unless that person had written permission or until Byles Brothers had him first. That one occasion does not affect the conclusion we have reached here.
[3] Charles Ford had an independent contract with E.W. McDaniel whereby Ford would haul logs to Mr. McDaniel's mill for $3.50 per tie with a deduction of $1 per tie as rent. Jerry Ford was paid only by his brother.