513 So.2d 509 (1987)
Howard HAWTHORNE, Agent, Plaintiff-Appellee,
v.
KINDER CORPORATION, d/b/a Tank-N-Tote, Defendant-Appellant.
No. 18963-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*510 Shuey & Smith by Steven M. Brainis, Shreveport, for defendant-appellant.
Touchstone & Wilson by David M. Touchstone, Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
MARVIN, Judge.
In this contract action Kinder Corporation, owner of Tank-N-Tote stores, appeals a judgment against it totaling $3,883 for amounts allegedly owed under the terms of 12 contracts that were signed by Kinder employees with SCA, a waste disposal corporation that provided and emptied trash dumpsters at TNT store locations in Shreveport. The judgment also awarded attorney fees as the contracts provided.
Kinder contends that its three employees who signed the contracts did not have the implied authority to bind the corporation and that apparent authority cannot be found under the circumstances of this case. These issues are to be decided on a case to case basis. We find no error and affirm.

IMPLIED AND APPARENT AUTHORITY
Implied and apparent authority are to be distinguished from each other and from express authority. Implied authority protects the agent against claims by his principal. Apparent authority protects the third person who deals with an agent and enforces the contract against the principal. See C.C. Arts. 2997, 3000; Note, Apparent Authority in a Civil Law Jurisdiction, 33 La.L.R. 735 (1973) and Harrison, Mandate, 34 La.L.R. 263 (1974) and cases discussed therein.
The concept of apparent authority only comes into play when the agent has acted beyond his actual authority and has no permission whatsoever from his principal to act in such a manner. The principal will be bound for such actions if he has put his agent in such a position or has acted in such a manner as to give an innocent third person the reasonable belief that the agent has authority to act for the principal ... One must look from the view point of the third person to determine whether an apparent agency has been created. (Emphasis added.) AAA Tire & Export, Inc. v. Big Chief Truck, 385 So.2d 426, 429 (La.App. 1st Cir.1980).
An agent's power must be express only in the purposes listed in C.C. Art. 2997. This article excludes those "things to be done" which are "merely acts of administration [or which] facilitate such acts." C.C. Art. 3000 provides the concept of implied authority:
Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise.
A principal may be bound by express authority or by the finding either of implied or apparent authority.

FACTS
The dispute arose in 1985 when defendant attempted to cancel the contracts which were signed with SCA between March 24, 1983 and July 23, 1984. Retail stores such as TNT apparently are required by government regulatory agencies to dispose of trash and waste. Kinder employees deemed trash disposal "necessary" to the business. The contracts were for a one-year primary term and contained an automatic *511 renewal provision unless written notice of cancellation was given 60 days before the term ended.
After the contracts were signed and during 1983, 1984, and for several months after the dispute arose in 1985, the defendant corporation paid SCA monthly for waste disposal services as each contract provided. Defendant's payments were made by checks signed by its president, Helbig. Helbig testified that his three subordinates were authorized to "hire," or contract with, SCA for the month-to-month disposal of waste but not under a "long term" or "signed" contract. He erroneously assumes that authority to "do business with" or to "hire" excludes, in all situations, authority to sign a written contract for a stated term.
Helbig acknowledged he was aware that his subordinates had created some business or agreed-to relationship with SCA for waste disposal, but asserts he did not know of any terms or of any written contracts. He "assumed" that either party to the agreements could cancel on short notice and without penalty. Helbig asserted that he and his subordinates understood they had only limited authority, but neither he nor any Kinder employee recited the details of any instructions that limited their authority to contract only for the month-to-month disposal of waste.
Helbig, a resident of Tyler, Texas, owned Texas and Louisiana corporations which operate retail stores and similar establishments. Mrs. Smith was the general manager who made decisions in Helbig's absence. She had worked for Helbig's Texas corporation and then helped organize and set up the Kinder Corporation's operation in Louisiana. Her trainee and eventual replacement as general manager of Kinder Corporation TNT stores was Ms. Stafford.
Kinder hired Essary as its corporate accountant for the Louisiana operation. Helbig, Smith, Stafford, and Essary considered it "necessary" that the TNT stores have disposal services in their day-to-day operation. Helbig directed Ms. Smith to change disposal services in 1983. Ms. Smith told Essary of this direction. With Ms. Smith's approval, Essary contacted SCA to submit a proposal to Kinder.
In response to Essary's inquiry, SCA's Hightower called at the Kinder Corporation office in Shreveport. The office was then routinely staffed by Ms. Smith, Ms. Stafford, and Essary. Hightower knew Essary was the corporation accountant and deduced that Ms. Smith and Ms. Stafford were about "equal" in rank. He discussed with these employees the SCA proposal. One or more of these employees contacted him from time to time as SCA services and dumpsters were needed at a TNT store.
Ms. Smith, as a supervisor for Helbig's Texas corporation, Tri-K Enterprises, had signed in Texas in 1981 an SCA disposal contract similar to the ones at issue in this action that were signed in Shreveport. Ms. Stafford signed seven SCA contracts for disposal services at Louisiana TNT stores on March 23, 1983. Essary signed four SCA contracts between November 18, 1983, and May 18, 1984. Lacy, manager of the TNT store at 4020 Hearne Ave. in Shreveport, signed the other contract on July 23, 1984. The "payment contact" under all contracts was either shown as Essary or Ms. Stafford at the Kinder Corporation's Shreveport office address. All correspondence and bills were mailed to and paid from that office.
Defendant elicited testimony at the trial only from Helbig, from Smith, who remained Helbig's immediate subordinate, and from Essary, who did not remain a Kinder employee. Ms. Stafford and Lacy did not testify. Their "availability" was not explained by other Kinder witnesses. Given the unexplained silence of these two Kinder employees, we must infer that their testimony would not have been favorable to Kinder. See Bates v. Blitz, 205 La. 536, 17 So.2d 816 at 820 (1944). See also Mitchell v. Clark, 448 So.2d 681 (La.1984); and Johnson v. Brown Paper Mill Co., 35 So.2d 774 (La.App. 2d Cir.1948).
Essary filed some or all the SCA contracts in the Kinder Shreveport offices. Each contract is entitled "WASTE REMOVAL & DISPOSAL SERVICE AGREEMENT." Each states the date the service *512 is to commence and that it is for a term of one year and subject to the "Standard Terms and Conditions on the reverse side."
Essary testified it was necessary for him, Smith and Stafford to make decisions to operate the company during Helbig's absence, which was about 50 percent of the time. Essary "understood" that he was ordering services from SCA and explained the basis of his understanding:
... I was acting on behalf of the corporation. We had open stores. We needed trash removal, and at one ... time, was told to ... go ahead and get a dumpster at a particular location.
Essary, who has a college degree, denied that he knew he was signing a one-year contract, notwithstanding what the written agreement clearly states. Ms. Smith and Helbig denied any knowledge that such contracts existed.
Ms. Smith, as general manager, wrote the letter to SCA to cancel the disposal services. Helbig testified that she did so at his instruction [on February 23, 1985]. Her letter did not mention that she was doing so at his instruction. Helbig added, however, that had he known that contracts had been signed by the "management of this corporation, we would have honored [them]." Essary's testimonythat he placed copies of the SCA contracts he signed in a file labeled "SCA Services" at the Kinder Corporation Shreveport officeenervates the claim of lack of knowledge. Helbig's testimony supports the finding of implied authority.
However remote and with what little credence may have been given by the trial court, the "possibility" that no one in the Kinder "management" read or knew of the existence of the signed contracts cannot legally avail the corporate defendant. See Louisiana Nat. Leasing Corp. v. ADF Serv., 377 So.2d 92 (La.1979).
The trial court did not give detailed written reasons for its judgment but indicated in its questions that Helbig had given implied authority to his subordinates to contract for disposal services. One of the cases cited in the brief written statement of the trial court pertains solely to the ratification of an agreement made by an agent without authority. We need not reach that issue.

CONCLUSION
We conclude, under Helbig's testimony alone, and especially when the entirety of the record is considered in the most favorable light that would support the judgment, that Helbig's subordinates in the Shreveport office of Kinder Corporation had implied authority to bind the corporation to the disposal contracts sued on, even though Helbig thought they were mere agreements about "doing business.". Disposal services were necessary "in the ordinary course of affairs to which [Kinder Corporation was] devoted." CC Art. 3000. Helbig does not deny that he expressly authorized his subordinates to obtain disposal services.
Moreover, the record supports the conclusion that SCA was reasonable in assuming that managerial employees of Kinder Corporation had the apparent authority to bind the corporation to routine, standard-term, disposal contracts. Compare Trichel Contracting Co. v. Little Creek Oil Co., 84 So.2d 874 (La.App. 2d Cir.1956); and Byles Welding & Tractor, Inc. v. McDaniel, 441 So.2d 48 (La.App. 3d Cir.1983).
At appellant's cost, the judgment is affirmed.